1

2

3

4

5

6                            **UNITED STATES DISTRICT COURT**
                                    **DISTRICT OF NEVADA**
7

8
    JANE DOE #1, JANE DOE #2, JANE          )      3:04-CV-00214-RAM
9   DOE #3, JANE DOE #4, SALLY DOE #1,      )
    JOHN DOE #1, JOHN DOE #2, and           )      **MEMORANDUM  DECISION**
10  JAMES ROE #1,                           )      <u>**AND ORDER**</u>
                                            )
11                      Plaintiffs,         )
              vs.                           )
12                                          )
    DENNIS BALAAM, Washoe County            )
13  Sheriff, in both his individual and     )
    capacities; et. al.,                    )
14                                          )
                        Defendants.         )
15  _____)

16          Before the court is Plaintiffs' Jane Doe #1, Jane Doe #2, Sally Doe #1, John Doe #1 and John

17  Doe #2's Motion for Partial Summary Judgment (Doc. #53-1).  Plaintiff Jane Doe #3 joined in the

18  motion (Doc. #55).  Defendant opposed the motion (Doc. #58) and Plaintiff replied (Doc. #59).

19                                        **<u>BACKGROUND</u>**

20          Plaintiffs were all subjected to strip searches by the Washoe County Sheriff's Office (WCSO)

21  at the Washoe County Detention Facility (WCDF).  (Doc. #53).  Defendants admit that Plaintiffs were

22  searched and that such searches were made pursuant to Washoe County's policy on self-surrenders.

23  (Doc. #58).  That policy, embodied in the  Washoe County Sheriff Department's Standard Operating

24  Procedure 710.050 et. seq. and is entitled "Contraband Control."  (Doc. #58, Exh. A).  Part of that

25  written policy states that "Unclothed searches will be performed by a Deputy of the same sex, only

26  under the following circumstances: ... When an inmate turns themselves into custody for an

27  outstanding warrant (self surrender), court ordered commitment, weekender agreement or any inmate

28

1  brought into the Facility, coming from any other hail, prison or correctional Facility (in-transits)." (*Id.*).

2      On April 28, 2004 Plaintiff Jane Doe #1 self-surrendered to the WCDF pursuant to a warrant

3  for a DUI charge. (Doc. #53). She had been previously granted an "own recognizance" (OR) release

4  by court order. (*Id.*). Plaintiff was required to strip naked, squat, spread her buttocks, turn her head,

5  and cough. (Doc. #14). She was then permitted to get dressed and was released without ever spending

6  any time in the general jail population or ever leaving the booking area. (*Id.*).

7      On December 2, 2004 Plaintiff Jane Doe #2 self-surrender to the WCDF pursuant to a warrant

8  on charges that were later dismissed. (*Id.*). She had been previously granted OR by Court Services.

9  (*Id.*). Plaintiff Jane Doe #2 was also required to strip naked, squat, spread her buttocks, turn her head,

10 and cough. (*Id.*). Like Jane Doe #1, she was also permitted to get dressed and then released without

11 ever spending time in the general jail population or ever leaving the booking area. (*Id.*).

12     In early 2003 Plaintiff Jane Doe #3 turned self-surrendered, pursuant to a warrant, to WCDF.

13 Prior to her surrender she had already contacted Court Services and arranged to be booked and

14 immediately released. Plaintiff was subject to the same kind of strip search as the other Doe Plaintiffs.

15     On or about June 17, 2004 Sally Doe #1 was stopped by a Nevada Highway Patrol Trooper and

16 arrested for driving on a suspended license. After being booked into WCDF she was ordered to take

17 a shower along with two female arrestees. During her shower the matron and/or deputy sheriff

18 repeatedly pulled the shower curtain back and stared at Plaintiff's naked person. A few days later

19 Plaintiff was taken before the Tribal Court Judge, who ordered Plaintiff released on her own

20 recognizance. Plaintiff was then transported back to the WCDF where she advised the jailer of her OR

21 release status. The jailers then took her behind a screen and subjected her to the same kind of search

22 as Jane Does #1 and #2.

23     On or about June 26, 2003 Plaintiff John Doe #1 appeared in Reno Municipal Court on a

24 charge of minor in possession. He was ordered by the judge to be booked and released. Plaintiff was

25 taken to the WCDF and subjected to the same type of strip search as the other Doe Plaintiffs.

26

27

28                                    2

1    On or about January 13, 2003 Plaintiff John Doe #2 self-surrender pursuant to a warrant.  He

2    had been previously "ORed" by Court Services.  Upon his surrender at WCDF Plaintiff was subject

3    to the same sort of strip search as the other Doe Plaintiffs.[1]

4    Plaintiffs' second amended complaint requests a permanent injunction prohibiting Defendants

5    from (1) conducting strip searches without reasonable suspicion for persons booked for minor offenses,

6    (2) conducting strip/cavity searches of arrested persons without a reasonable suspicion that person is

7    secreting contraband, and (3) conducting strip/cavity searches of person self surrendering who have

8    been cleared for own recognizance release.  (Doc. #14).  Further, Plaintiffs seek permanent injunctive

9    relief prohibiting Defendants from engaging  in similar unconstitutional conduct in the future.  (*Id.*).

10   Plaintiffs also seek a mandatory permanent injunction requiring and ordering Defendants Balaam and

11   Washoe County to institute proper training and policy changes necessary to conform to existing Ninth

12   Circuit law.  Finally, Plaintiffs seek damages and attorney's fees.

13   **DISCUSSION**

14   *A.* **Standard for Summary Judgment**

15   The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as

16   to the facts before the court.  *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471

17   (9th Cir. 1994).  The moving party is entitled to summary judgment where, viewing the evidence and

18   the inferences arising therefrom in favor of the nonmovant, there are no genuine issues of material fact

19   in dispute and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c);

20   *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).  Judgment as a matter of law is appropriate

21   where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving

23   ----

[1]Plaintiffs' second amended complaint (Doc. #14) also includes facts about James Roe #1, who remains in the case pro se but has not joined in this motion.

The facts alleged regarding Plaintiff James Roe #1 are as follows: on or about December 13, 2003 James Roe #1, a transsexual, was arrested for a misdemeanor and transported to WCDF.  During the transport Plaintiff informed the transporting officer, Charal McMillan that he was a transsexual, apparently with the hope that the officer would protect him.  Instead, Officer McMillan allegedly assembled numerous individuals behind a screen and ordered Plaintiff to drop his pants so that they could "check out his equipment."

3

1    party.   FED. R. CIV. P. 50(a).   Where reasonable minds could differ on the material facts at issue,

2    however, summary judgment is not appropriate.   *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

3    Cir. 1995), cert. denied, 516 U.S. 1171 (1996).

4            The moving party bears the burden of informing the court of the basis for its motion, together

5    with evidence demonstrating the absence of any genuine issue of material fact.   *Celotex Corp. v.*

6    *Catrett*, 477 U.S. 317, 323 (1986).   Once the moving party has met its burden, the party opposing the

7    motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts

8    showing that there is a genuine issue for trial.   *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

9    (1986).   Although the parties may submit evidence in an inadmissible form, only evidence which might

10   be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment.

11   FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

12           In evaluating the appropriateness of summary judgment, three steps are necessary: (1)

13   determining whether a fact is material; (2) determining whether there is a genuine issue for the trier

14   of fact, as determined by the documents submitted to the court; and (3) considering that evidence in

15   light of the appropriate standard of proof.   *Anderson*, 477 U.S. at 248.   As to materiality, only disputes

16   over facts that might affect the outcome of the suit under the governing law will properly preclude the

17   entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be

18   considered.   *Id.*   Where there is a complete failure of proof concerning an essential element of the

19   nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to

20   judgment as a matter of law.   *Celotex*, 477 U.S. at 323.   Summary judgment is not a disfavored

21   procedural shortcut, but an integral part of the federal rules as a whole.   *Id.*

22   **B.      Municipal Liability for Deliberate Indifference**

23           Section 1983 creates a cause of action against a person who, acting under color of state law,

24   deprives another of rights guaranteed under the Constitution.   42 U.S.C. § 1983.   Section 1983 does

25   not create any substantive rights, rather it is the vehicle whereby plaintiffs can challenge actions by

26   governmental officials.   The plaintiff must demonstrate that (1) the action occurred "under color of

27   law" and (2) the action resulted in the deprivation of a constitutional right or federal statutory right.

28                                                    4

*Parratt v. Taylor*, 451 U.S. 527, 535, *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327 (1986).  In order for section 1983 liability to attached there must be participation in the alleged rights deprivation: section 1983 does not permit respondeat superior liability.  *See Monnell v. Dept. of Social Services*, 436 U.S. (1978)(rejecting the concept of respondeat superior liability in the section 1983 context and requiring individual liability for the constitutional violation.).

The Ninth Circuit has laid out a four part test to determine whether a plaintiff has a valid section 1983 claim against a municipality: "(1) that [the plaintiff] possessed a constitutional right of which he [or she] was deprived; (2) that the municipality had a policy; (3) that his policy amount to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation."  *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996).

Here, there is no dispute that the jail officials were acting under color of state law when they strip searched Plaintiffs.  Further, it is undisputed that Washoe County had a policy of strip searching all those self-surrendering to the jail for booking, even if they were to be immediately released.  It is also undisputed that the Plaintiffs bringing and joining in this motion were all subject to the strip search pursuant to this policy.  Defendants' sole argument is that Plaintiffs cannot show that the policy evidenced deliberate indifference to their Fourth Amendment right to be free from unreasonable searches because Defendant Washoe County has articulated legitimate security concerns as justification for its policy.  Plaintiffs' motion asks the court to find that, *as a matter of law,* Defendant Washoe County's policy of strip searching all those who self-surrender amounts to deliberate indifference to their Fourth Amendment rights.

Jail security concerns

In general, the law gives wide-ranging deference to prison officials' decisions concerning the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain security.  *Bell v. Wolfish*, 441 U.S. 520, 555-557 (1979).  However, the security needs of local jail facilities must be balanced against the privacy interest of arrestees charged with minor offenses.  *Giles v. Ackerman,* 746 F.2d 614 (9th Cir. 1984)*.*  Even giving due consideration to "the difficulty of operating a detention facility safely, the seriousness of the risk

5

of smuggled weapons and contraband, and the deference we owe jail officials' exercise of judgment in adopting and executing policies necessary to maintain institutional security[,]" jail officials may not simply invoke security concerns as justification for a blanket strip search policy. *Way v. County of Ventura,* 445 F.3d 1157, 1158 (9th Cir. 2006).

Here, Defendants argue that the "portion of [the policy] which [sic] states that self-surrenders will be subject to strip search was based upon legitimate correctional facility interests." (Doc. #58). As support for this they offer the deposition testimony of Todd Vinger and Eric Radli that they each believe that people who surrender to the jail present a security risk because they know that they are going to the facility, as opposed to people arrested in the field who, presumably, make an unexpected visit to the jail. (Doc. #58, Exh. C, p. 80; Exh. D., p. 22-23). Defendants suggest no other correctional interests in strip searching those who self-surrender, are booked and released, and never commingle with the general jail population. With this, we turn to our analysis of the search policy as applied to Plaintiffs.

Reasonable suspicion standard applies to strip searches

The Ninth Circuit has explicitly adopted "reasonable suspicion" as the standard by which strip/body cavity searches should be evaluated. *Weber v. Dell*, 804 F.2d 796, 800 (9th Cir. 1986). The test of reasonableness requires balancing "the need for the particular search against the invasion of personal rights that the search entails." *Bell*, 441 U.S. at 559. "[A]rrestees for minor offenses may be subjected to a strip search only if jail officials have a reasonable suspicion that the particular arrestee is carrying or concealing contraband or suffering from a communicable disease." *Giles v. Ackerman*, 746 F.2d 614, 615 (where plaintiff was subjected to a strip search after being arrested for several outstanding parking tickets). Indeed, the Ninth Circuit has commented that "[t]he intrusiveness of a body-cavity search cannot be overstated. Strip searches involving the visual exploration of body cavities is dehumanizing and humiliating." *Kennedy v. Los Angeles Police Dept.*, 901 F.2d 702, 711 (9th Cir. 1990).

In *Kennedy* the Ninth Circuit held that the city's blanket policy of subjecting *all* felony arrestees, regardless of reasonable suspicion, to a visual body-cavity search was unconstitutional. 901

6

F.2d at 716.  In that case, the plaintiff was arrested for a felony grand theft after a disagreement with a roommate.  *Id.*  The circumstances of her arrest did not include weapons, drugs, contraband, violent acts, or other circumstances that provided reasonable suspicion to believe she was concealing contraband.  *Id.*  She was taken to a police station and subjected to a visual body cavity search pursuant to a policy that required such searches be made for all felony arrestees.  *Id.* at 711-12.  Likewise, in *Ward v. County of San Diego* the Ninth Circuit considered a policy under which the plaintiff and other minor offense arrestees were  subjected to a strip searches even before an own recognizance (O.R.) release determination was made, commenting "[i]n most instances the unreasonableness of a strip search conducted prior to an O.R. release determination is plain.  791 F.2d 1329, 1333 (9thCir. 1986)(where plaintiff was arrested for the misdemeanor offense of refusing to sign a promise to appear).

Thus, the clear weight of authority dictates that jail officials may not strip search an arrestee absent a reasonable suspicion that the arrestee is smuggling drugs, weapons, or other contraband.  No contrary authority has been brought to the court's attention.  Further, the Ninth Circuit has previously held that a blanket policy of searching all persons arrested on fresh misdemeanor drug charges could not serve as a proxy for reasonable suspicion.  *Way v. County of Ventura*, 445 F.3d 1157, 1163.  We think the policy here similarly offensive: Defendants used Plaintiffs' status as self-surrender arrestees as a proxy to justify the strip search.  Such a practice does not comport with the requirements of the Fourth Amendment.

" Reasonable suspicion can be based on such factors as the nature of the offense, the arrestee's appearance and conduct, and the prior arrest record," *Giles*, 746 F.2d at 617; *accord Way*, 445 F.3d at 1162 (concluding that an arrest for being under the influence of a drug does not supply reasonable suspicion that drugs are concealed in a bodily cavity); *cf. People v. Wade*, 208 Cal. App. 3d 304, 306-07 (Cal. Ct. App. 1989)(holding that a body cavity search *was* justified by the arresting officer's observation of the suspect apparently trying to put something beneath his waistband).

Nothing in the circumstances here presented suggests that Defendants had a reasonable suspicion that any of the Plaintiff were secreting  contraband of any type.   Further, we agree with the

7

*Ward* court; the unreasonableness of a strip search prior to an O.R. release is plain.  All of the Plaintiffs were booked and then released on their own recognizance without ever being housed with the general jail population,[2] thus vitiating Defendants' argument that the policy was justified due to concerns about "cross-contamination."  (Doc. #58, Exh. D, p. 22).  Defendants have not set forth any facts that would support a determination that reasonable suspicion existed for a search of Plaintiffs.  As stated above, a policy of strip searching all arrestees who self-surrender and are then released on their own recognizance cannot be used as a proxy for reasonable suspicion.

## CONCLUSION

For the reasons set forth above, the portion of the Washoe County Sheriff Department's Standard Operating Procedure 710.050 et. seq. that provides for unclothed searches of arrestees who self-surrender violates the clearly established law under the Fourth Amendment of the Constitution. The application of this policy to Plaintiffs who joined in this motion violated their constitutional rights. This ruling does not apply to the claims of James Roe #1, whose claims are not before the court at this time since he did not join in the motion.  Plaintiffs' Motion for Partial Summary Judgment (Doc. #53, #55) is **GRANTED**.

DATED:  June 20, 2007.

_____
UNITED STATES MAGISTRATE JUDGE

[2]Sally Doe #1 was housed with the general population at some point but was subject to the search in question immediately before her O.R. release.