**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| JANE DOE #1, JANE DOE #2, JANE DOE #3, JANE DOE #4, SALLY DOE #1, JOHN DOE #1, JOHN DOE #2, and JAMES ROE #1,<br><br>Plaintiffs,<br><br>vs.<br><br>DENNIS BALAAM, Washoe County Sheriff, in both his individual and official capacities; WASHOE COUNTY, a political subdivision of the State of Nevada; and DOES 2-50; RED and WHITE GOVERNMENT/MUNICIPAL/ COUNTY ENTITIES 1-10, and SILVER AND BLUE CORPORATIONS 1-10,<br><br>Defendants. | 3:04-CV-0214-RAM<br><br><br><br>**MEMORANDUM DECISION AND ORDER** |

Before the court is Defendants' Motion for Summary Judgment (Doc. #72). Plaintiff James Roe #1 opposed the motion (Doc. #75) and Defendants replied (Doc. #78).

## I. BACKGROUND

Plaintiff James Roe #1 alleges Defendants, Sheriff Dennis Balaam and Washoe County, violated Plaintiff's Constitutional right against an unreasonable search when, after his arrest for a misdemeanor, deputies ordered Plaintiff to lift his shirt and drop his pants subjecting Plaintiff to a degrading and humiliating strip search (Doc. #14 at 13). Specifically, Plaintiff alleges, on or about December 13, 2003, he was arrested for a misdemeanor after allegedly breaking his father's model airplane (*Id.*). After being handcuffed and put in the police car, Plaintiff claims he notified the arresting officer that he is a transsexual (Doc. #14 at 12).

1  Plaintiff then alleges the arresting officer informed the deputies at the jail that Plaintiff was
2  a transsexual and those deputies, in a conspiracy with other deputies, "assembled numerous
3  individuals behind a screen and ordered Plaintiff JAMES ROE #1 to drop his pants so that
4  they could 'check out his equipment', thereby subject[ing] him to a humiliating and degrading
5  strip search, even though Plaintiff JAMES ROE #1 was only arrested for a misdemeanor and
6  even though there was absolutely no reasonable suspicion whatsoever that he had secreted
7  contraband on his or in his person." (Doc. #14 at 13). Plaintiff asserts he was emotionally
8  traumatized by the incident (*Id.*). Plaintiff also asserts he specifically takes issue with
9  standard operating procedure (SOP) 710.050 Contraband Control, alleging a portion on page
10 two demonstrates an unconstitutional hole in Defendants' policy whereby Defendants are
11 "strip/cavity searching citizens and releasing them." (*Id.* at 13).

12 Plaintiff's Second Amended Complaint for Declaratory and Injunctive Relief and
13 Damages and Attorney's Fees and Costs includes the following remaining causes of action:
14 1) Violation of Civil Rights - Fourth Amendment (to be free from unreasonable searches); 2)
15 Punitive Damages; and 3) Intentional Infliction of Emotional Distress (*Id.* at 15-17).

## II. STANDARD FOR SUMMARY JUDGMENT

17 The purpose of summary judgment is to avoid unnecessary trials when there is no
18 dispute as to the facts before the court. *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*,
19 18 F.3d 1468, 1471 (9th Cir. 1994). The moving party is entitled to summary judgment where,
20 viewing the evidence and the inferences arising therefrom in favor of the nonmovant, there
21 are no genuine issues of material fact in dispute and the moving party is entitled to judgment
22 as a matter of law. FED. R. CIV. P. 56(c); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).
23 Judgment as a matter of law is appropriate where there is no legally sufficient evidentiary
24 basis for a reasonable jury to find for the nonmoving party. FED. R. CIV. P. 50(a). Where
25 reasonable minds could differ on the material facts at issue, however, summary judgment is
26 not appropriate. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*,
27 516 U.S. 1171 (1996).

The moving party bears the burden of informing the court of the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the party opposing the motion may not rest upon mere allegations or denials of the pleadings, but must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the parties may submit evidence in an inadmissible form, only evidence which might be admissible at trial may be considered by a trial court in ruling on a motion for summary judgment. FED. R. CIV. P. 56(c); *Beyene v. Coleman Sec. Serv., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988).

In evaluating the appropriateness of summary judgment, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine issue for the trier of fact, as determined by the documents submitted to the court; and (3) considering that evidence in light of the appropriate standard of proof. *Anderson*, 477 U.S. at 248. As to materiality, only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id.* Where there is a complete failure of proof concerning an essential element of the nonmoving party's case, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Id.*

### III. DISCUSSION

Defendants move for summary judgment on all three of Plaintiff's remaining causes of action (Doc. #72). First, Defendants assert Defendant Balaam is entitled to immunity from suit in his official and individual capacities (*Id.* at 9-13). Second, Defendants assert Plaintiff's first cause of action, for an alleged violation of Plaintiff's Fourth Amendment right to be free from unreasonable searches, fails because there was no constitutional violation where the Defendants had "reasonable suspicion" to conduct an unclothed search of Plaintiff and any

alleged violation was not based on a blanket policy of Defendants (Doc. #72 at 14-18). Third, Defendants assert Plaintiff's punitive damages cause of action must be dismissed because punitive damages is not a separate, independent cause of action (*Id.* at 18-19). Finally, Defendants assert Plaintiff's intentional infliction of emotional distress cause of action must be dismissed because Defendant Balaam is immune from suit pursuant to NRS 41.0335 and Plaintiff cannot satisfy all the elements of this cause of action (*Id.* at 19-23). In the alternative, Defendants request this court exercise its discretion pursuant to 28 U.S.C. § 1367(c) to dimiss the pendent state-law claim with prejudice (*Id.* at 23).

Plaintiff argues Defendants are not entitled to qualified immunity, the search was unconstitutional at the time, Defendant Washoe County is liable for its unconstitutional policy and there are genuine issues of material fact precluding summary judgment on Plaintiff's state law claim of intentional infliction of emotional distress (Doc. #75). Plaintiff further argues the court should exercise its discretion and accept jurisdiction over the state law claim because it is entwined with and related to the alleged federal claims (*Id.* at 9, n.3).

The first inquiry must be whether there was, in fact, a violation of Plaintiff's constitutional right to be free from unreasonable searches. If this question is answered negatively, the court must grant summary judgment on the merits without the need to consider Defendants' other arguments. Accordingly, the court will address this issue first.

**Fourth Amendment and the Right to be Free From Unreasonable Searches**

Defendants assert there was a reasonable suspicion to conduct an unclothed search of Plaintiff under the circumstances of this case (Doc. #72 at 14). Defendants contend it is well established that visual cavity searches of prisoners are constitutional as long as there is "reasonable suspicion" for the search (*Id.*). Defendants contend there was reasonable suspicion because, when Plaintiff was first subjected to a patdown, the deputy conducting the search discovered something unusual in Plaintiff's crotch area (*Id.* at 15). Plaintiff advised the deputy that he was a transsexual and there was a rolled-up sock in his crotch area (*Id.*). Additionally, Plaintiff previously informed the arresting officer that he was a transsexual

1  (Doc. #72 at 15). Defendants contend it was reasonable to pursue a further search of Plaintiff
2  to determine what was, in fact, in his crotch area and to determine Plaintiff's gender for
3  appropriate housing purposes (*Id.*). In conducting the unclothed search, Plaintiff was
4  advised to lift his shirt and pull down his pants (*Id.*).

5  Plaintiff argues there was no reasonable suspicion to search him because he was going
6  to be released on his own recognizance and was not going to enter the general jail population
7  (Doc. #75 at 4). Plaintiff further argues that an arrest for misdemeanor destruction of
8  property does not supply reasonable suspicion that contraband would be on Plaintiff's person
9  (*Id.* at 7).

10  The record indicates, and Defendants assert, the deputies were not aware that Plaintiff
11  would be released on his own recognizance or that Plaintiff would not enter the general jail
12  population at the time of the unclothed search. In fact, Deputy Mary Jean Cloud, in a tape-
13  recorded interview with the Office of Professional Integrity concerning the unclothed search,
14  stated that Plaintiff "would be housed in HU#4, D-wing", evidencing that Plaintiff was going
15  to be housed in the general jail population (Doc. #78 at 6). Defendants also assert Plaintiff
16  informed the deputies that he would not be making bail and that Court Services informed the
17  deputies Plaintiff was not eligible for own-recognizance (OR) release (*Id.* at 7). Defendants'
18  version of the facts is consistent with the record and Plaintiff's own testimony at his
19  deposition. When asked at his deposition if he eventually got out of jail that evening, Plaintiff
20  stated that he got out of jail when a Hispanic male came around and said he had *spoken to*
21  *a judge on the phone* and that Plaintiff could go home without posting any bail or on
22  Plaintiff's own recognizance (*Id.* at 7-8). Plaintiff did not post bail and was not released on
23  his own recognizance until after a judge so ordered. Furthermore, based on Plaintiff's own
24  testimony, it appears Plaintiff was not aware that he would be released on his own
25  recognizance or that he would not enter the general jail population until the Hispanic male
26  came around ready to release him, which was only after talking to a judge on the phone and
27  after the search had been conducted.

28

Assuming Plaintiff would be housed in the general jail population, the question remains whether the deputies had a reasonable suspicion to conduct an unclothed search of Plaintiff where Plaintiff informed the deputies that he was a transsexual and was concealing a rolled-up sock in his crotch area.

The Ninth Circuit holds that arrestees for minor offenses may be subjected to a strip search only if the jail officials have a *reasonable suspicion* that the particular arrestee is *carrying or concealing contraband. Giles v. Ackerman*, 746 F.2d 614, 615 (9th Cir. 1984), *cert. denied*, 471 U.S. 1053 (1985). The Washoe County Sheriff's Department defines contraband as "any item, which has been introduced in the Facility, which has not been issued by staff or approved by the Watch Commander. Authorized items may be considered contraband when found altered or in sufficient quantity to be considered a threat to the safety and security of the Facility." (Doc. #78, Exh. A). "A reasonable suspicion exists when the person responsible for the search is aware of specific articulable facts, and inferences from those facts, which reasonably warrant a suspicion that evidence will be uncovered." *United States v. Most*, 789 F.2d 1411, 1415 (9th Cir. 1986); *see also, Kirkpatrick v. City of Los Angeles*, 803 F.2d 485, 490 (9th Cir. 1986). The test for "reasonable suspicion" is milder than that of "probable cause" imposed by the Fourth Amendment as a requirement for the issuance of warrants. *Most*, 789 F.2d at 1415. "In passing on the legality of such a search, [the court] must consider all the surrounding circumstances." *Id*.

Plaintiff admits in his deposition that "his sock [was] concealed." (Doc. #75 at 5). Apparently, Plaintiff's position is that because he told the deputies that he was a transsexual, and because he informed the deputies that he had a rolled-up sock concealed in his crotch area, that should have been then end of their inquiry; the deputies were under no duty or obligation to investigate what was actually concealed in Plaintiff's crotch area and apparently should have taken Plaintiff at his word. Plaintiff's argument lacks merit.

Plaintiff recognizes the inherent difficulty in operating a detention facility and preventing smuggling of weapons and contraband; but, contends a blanket policy is unconstitutional by virtue of jail officials' invocation of security concerns (Doc. #75 at 5). Plaintiff has failed to produce evidence that he was subjected to an unclothed search based on a "blanket policy." While the court previously found Washoe County's policy of strip searching all arrestees who self-surrendered to county jail unreasonable absent reasonable suspicion that any arrestee was smuggling contraband (Doc. #60), the court did not find it unreasonable to conduct an unclothed search when the deputy has a reasonable suspicion to believe that contraband is hidden beneath the clothing of an inmate, as provided in the policy (Doc. #78 Exh. A). Under the definition of contraband, a rolled-up sock in Plaintiff's crotch area is contraband.

Under these facts, the deputies certainly had a reasonable suspicion, based on specific, articulated facts coming directly from Plaintiff, that something would be uncovered. It would have been irresponsible and potentially dangerous for the deputies not to investigate further to determine whether Plaintiff was simply concealing a rolled-up sock or whether there was something more. Deputies are not required to take an arrestee at his word (transsexual or otherwise) that he is simply concealing a rolled-up sock where they have no way of knowing whether an arrestee is being truthful about what he is, in fact, concealing. Failing to search for contraband where the arrestee specifically states he is concealing something could potentially lead to liability if that arrestee is, in fact, concealing contraband that enters the general jail population and that contraband is used to injure another inmate. While Plaintiff argues his misdemeanor arrest for destruction of property does not supply reasonable suspicion that contraband would be concealed on Plaintiff, Plaintiff's own words that he is concealing something in his crotch area, be it a rolled-up sock or something else, certainly supplies reasonable suspicion that Plaintiff is, in fact, concealing something in his crotch area.

///

As the Supreme Court recognized in *Bell v. Wolfish*:

> [S]imply because prison inmates retain certain constitutional rights does not mean that these rights are not subject to restrictions and limitations. "Lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." The fact of confinement as well as the legitimate goals and policies of the penal institution limits these retained constitutional rights. There must be a "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *This principle applies equally to pretrial detainees and convicted prisoners. A detainee simply does not possess the full range of freedoms of an unincarcerated individual.*

*Bell v. Wolfish*, 441 U.S. 520, 545-546 (1979) (internal citations omitted) (emphasis added).

Considering all the surrounding circumstances, where Plaintiff personally informed deputies he was concealing something in his crotch area, substantial evidence in the record does not exist to suggest the deputies exaggerated their response by instructing Plaintiff, in private and without touching him, to lift his shirt and drop his pants so they could determine what he was concealing. The fact that liability may exist under similar facts, where an inmate is injured due to the deputies' *failure* to conduct a search of an arrestee charged with a misdemeanor even after being put on notice by that arrestee that the he was concealing a rolled-up sock and that rolled-up sock turned out to be concealing a weapon, further supports the reasonableness of the search in this case.

Washoe County's policy states: "The inmate will be given ample opportunity to voluntarily remove and surrender any and all contraband prior to the initiation of the search and between each successive escalation of the search." (Doc. #78, Exh. A). There is no evidence in the record, and Plaintiff has not alleged, that he attempted to voluntarily remove the sock prior to the initiation of the unclothed search. Even assuming Plaintiff was not given ample opportunity to voluntarily remove the sock prior to the initiation of the search, the language of the policy nevertheless contemplates a search being conducted. Under the facts of this case, the deputies had a "reasonable suspicion" to conduct a search of Plaintiff to determine exactly what he was concealing.

It is also important to note that even if the court were to find a violation of Plaintiff's Fourth Amendment rights, summary judgment is still appropriate because there are no named defendants on which to impose liability. There is no respondeat superior liability under § 1983. *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680 (9th Cir. 1984). Liability under § 1983 arises only upon a showing of personal participation by the defendants in the alleged constitutional deprivation. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them. *Taylor*, 880 F.2d at 1045. A municipality is only liable for individual employees' actions when those actions, pursuant to an official municipal policy or a longstanding practice or custom of some nature, caused a constitutional tort. *Webb v. Sloan*, 330 F.3d 1158, 1163-1164 (9th Cir. 2003); *see also, Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 694 (1978) (holding a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents; but, instead can only be held liable where the execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury).

Here, Plaintiff has not alleged Defendant Balaam participated in the alleged violation or knew of and failed to act to prevent the alleged violation. Plaintiff has also failed to show individual employees' acted pursuant to an official Washoe County policy or longstanding practice or custom and those actions caused a constitutional tort. Accordingly, Plaintiff has failed to state a cognizable claim against Defendants Balaam or Washoe County.

///
///
///
///
///

9

### IV. CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (Doc. #72) is **GRANTED**.

Let judgment be entered accordingly.

DATED: December 19, 2007.

_____
UNITED STATES MAGISTRATE JUDGE